UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES HILL,

        Petitioner,

          v.

STEVE RIVARD,

        Respondent.

_____/

CASE NO. 2:10-CV-14056

JUDGE GEORGE CARAM STEEH

MAGISTRATE JUDGE PAUL J. KOMIVES

## REPORT AND RECOMMENDATION

*Table of Contents*

I.    RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.   REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    A.   *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    B.   *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    C.   *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    D.   *Judicial Bias (Claim I)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
        1.   *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
        2.   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    E.   *Courtroom Appearance (Claim II)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    F.   *Ineffective Assistance of Counsel (Claim III)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
        1.   *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
        2.   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
            a. Opening Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
            b. Failure to Obtain Medical Records . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
            c. Alibi Witness . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
    G.   *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . . . 20
        1.   *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
        2.   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
    H.   *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

\*      \*      \*      \*      \*

I.    RECOMMENDATION: The Court should deny petitioner's application for the writ of

habeas corpus and should deny petitioner a certificate of appealability.

II.    REPORT:

A.    *Procedural History*

1.      Petitioner Charles Hill is a state prisoner, currently confined at the St. Louis Correctional Facility in St. Louis, Michigan.

2.      On July 25, 2007, petitioner was convicted of first degree home invasion, MICH. COMP. LAWS § 750.110a(2); domestic violence, third offense, MICH. COMP. LAWS § 750.81(4); resisting or obstructing a police officer, MICH. COMP. LAWS § 750.81d(1); and malicious destruction of police property, MICH. COMP. LAWS § 750.337b, following a jury trial in the Saginaw County Circuit Court.  On February 6, 2008, he was sentenced as a fourth habitual offender, MICH. COMP. LAWS § 769.12, to concurrent terms of 20-30 years' imprisonment on the home invasion conviction, and 34 months' to 15 years' imprisonment on each of the remaining convictions.

3.      Following his conviction, petitioner filed a motion for new trial, asserting ineffective assistance of counsel.  Following an evidentiary hearing, the trial court denied the motion.

4.      Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

I.      JAMES BORCHARD OF THE PROSECUTOR'S OFFICE HANDLED THIS MATTER AT THE DISTRICT COURT LEVEL.  JUDGE FRED BORCHARD PRESIDED OVER THE CIRCUIT COURT PROCEEDINGS. JAMES AND FRED ARE BROTHERS.  MR. HILL WAS DENIED HIS CONSTITUTIONAL RIGHTS TO AN IMPARTIAL JUDGE AND DUE PROCESS.  THE CONVICTION MUST BE REVERSED.

II.     JUDGE BORCHARD REFUSED MR. HILL'S REQUEST FOR ASSISTANCE IN OBTAINING DECENT CLOTHING FOR THE TRIAL. THE TRIAL COURT DEPRIVED MR. HILL OF HIS DUE PROCESS RIGHT TO A FAIR TRIAL.  THE CONVICTIONS MUST BE REVERSED.

III.    TRIAL COUNSEL TOLD THE JURY THAT MR. HILL WAS AT THE VICTIM'S HOUSE. COUNSEL REFUSED TO PURSUE THE MEDICAL EVIDENCE THAT WOULD SUBSTANTIATE MR. HILL'S DEFENSE TO THE RESISTING AND OBSTRUCTING CHARGE. COUNSEL DID NOT CALL MR. HILL'S ALIBI WITNESS.   TRIAL COUNSEL

2

PROVIDED INEFFECTIVE ASSISTANCE AND MR. HILL IS ENTITLED
TO A NEW TRIAL.

Petitioner filed a *pro se* supplemental brief, raising two additional claims challenging his sentencing.
The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence.
*See People v. Hill*, No. 283951, 2009 WL 1830750 (Mich. Ct. App. June 25, 2009) (per curiam).

5.      Petitioner, proceeding *pro se*, sought leave to appeal these issues to the Michigan
Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard
order. *See People v. Hill*, 485 Mich. 978, 774 N.W.2d 877 (2009).

6.      Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus
on October 8, 2010. As grounds for the writ of habeas corpus, he raises the three claims raised by
counsel in the Michigan Court of Appeals.

7.      Respondent filed his answer on April 27, 2011. He contends that petitioner's second
claim is barred by petitioner's procedural default in the state courts, and that all of petitioner's
claims are without merit.

B.      *Factual Background Underlying Petitioner's Conviction*

Petitioner's conviction arises from an incident during the early morning hours of January 26,
2007, in which petitioner broke into the home of his ex-girlfriend. The evidence adduced at trial was
accurately summarized in the prosecutor's brief in the Michigan Court of Appeals:

> The victim Tina Anderson was Defendant's ex-girlfriend. They had dated
> for about a year and had lived together. After the end of their relationship, the victim
> had no problems with Defendant. On January 26, 2007, at about 2 a.m., she was
> sleeping in her downstairs bedroom. She was awakened by a noise coming from her
> bedroom window. She saw Defendant tapping on the window. Defendant then
> broke out the window. He then went to the victim's side door and kicked it in.
> Defendant threw the victim into the walls of her house. She received cuts to her
> forehead and an injury to her left arm. Defendant threw her so hard that she broke
> through the walls. Defendant also threw dining room chairs on her. Defendant left

3

in his mother's car.  Ten minutes after he left, the victim called his mother.  Shortly thereafter, the police arrive, and they were told by the victim what had happened.  She told them that Defendant may be at his mother's house on South 27th Street.  Defendant did not have permission to enter her house that night.

Officer Anthony Teneyuque responded to the victim's residence and interviewed the victim.  She was visibly upset, and her appearance was in disarray.  She indicated an injury to her arm.  There appeared to be bruises on her bicep area.  She also had a cut under her eye.  She told the officer that she heard a commotion at her window.  Defendant broke into the back window and entered her house.  Defendant was upset and yelling at her.  Defendant threw her against the wall and assaulted her.  Defendant left in a car.  The victim stated that Defendant may have been heading to his mother's house.  The officer saw that a window was broken.  He also saw an obvious forced entry through the south side door.  The officer found damage to the drywall.  Sergeant Wise also observed two holes in the walls in the dining room and a broken double-pane window.  She also saw pry marks and footprints on the south entrance door.

Officer Teneyuque requested a Buena Vista Township police officer to respond to Defendant's mother's house.  Sergeant James Baker went to 346 South 27th Street.  He knocked on the front door.  A female answered.  He asked her if Defendant was there.  She said that Defendant was there and allowed the sergeant to enter.  She yelled for Defendant.  Sergeant Baker heard a back door open as if someone was leaving.  The sergeant ran out the front door and went to the back of the house.  He saw Defendant running through the back yard.  Defendant jumped a fence and continued running over to the next yard.  Sergeant Baker told Defendant to come back.  Defendant turned around and looked at the officer, but Defendant did not stop.

In the meantime, Officer Teneyuque proceeded to South 27th Street.  About a block from Defendant's mother's address, Officer Teneyuque was advised that Defendant ran from the house.  He and Officer Shawntina Austin followed Defendant's footprints in the snow.  The prints led to Defendant, who was hiding behind a shed.  Officer Teneyuque saw Defendant sitting on the ground behind the shed and ordered him out.  Officer Austin heard Officer Teneyuque order Defendant several times to show his hands.  The officer again ordered Defendant out, but again Defendant refused.  Officer Teneyuque grabbed Defendant.  He tasered Defendant, but because of Defendant's heavy clothing, the taser had no effect.  So, the officer and Officer Austin physically attempted to take Defendant into custody, but Defendant didn't come out willingly.  Officer Teneyuque attempted to pull Defendant's arm behind his back.  Defendant resisted and struggled.  So, the officer maced Defendant, but that did not have any effect.  Officer Timothy Patterson dry-stunned Defendant with a taser because Defendant was not relaxing his arms, which Defendant was hiding under his body.  Defendant eventually relaxed his arms, and the officers handcuffed him.

They got Defendant onto his feet and instructed him to walk to the patrol cars, but Defendant refused.  The officers then physically moved Defendant to get

him to walk.  While officers walked Defendant to the patrol car, Defendant went
limp, causing the officers to fall to the ground.

They placed Defendant into Officer Patterson's patrol car.  Defendant was
belligerent and upset.  Defendant kicked at the patrol car window.  Defendant was
warned several times to stop, but Defendant continued kicking until he was tasered.
Defendant caused the top of the car door to bend out.  Before Officer Patterson's
shift, his patrol car had no damage to the rear door or windows.  Because of the
damage to the door, Officer Patterson placed his patrol car out of service.  The door
frame was attempted to be fixed, but the repairs did not completely fix the frame.

Pl.-Appellee's Br. on Appeal, in *People v. Hill*, No. 283951 (Mich. Ct. App.), at 1-4 (citations to

trial transcript omitted); *see also*, Def.-Appellant's Br. on Appeal, at 1-4.

C.     *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by

the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No.

104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).

Amongst other amendments, the AEDPA amended the substantive standards for granting habeas

relief by providing:

(d) An application for a writ of habeas corpus on behalf of a person in
custody pursuant to the judgment of a State court shall not be granted with respect
to any claim that was adjudicated on the merits in State court proceedings unless the
adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable
application of, clearly established Federal law, as determined by the Supreme Court
of the United States; or

(2) resulted in a decision that was based on an unreasonable determination
of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning."

*Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002).  "A

state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts

5

the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the

6

benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.    *Judicial Bias (Claim I)*

Petitioner first contends that the trial judge was biased against him because the judge who presided over his trial was the brother of the prosecuting attorney who represented the state at the district court level prior to trial. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.    *Clearly Established Law*

Perhaps "[n]o right is more fundamental to the notion of a fair trial than the right to an impartial judge." *Bracy v. Gramley*, 81 F.3d 684, 696 (7th Cir. 1996) (Rovner, J., dissenting), *rev'd*, 520 U.S. 899 (1997); *see also*, Mass. Const. of 1780, pt. 1, art. 29. Thus, "the Due Process Clause clearly requires a 'fair trial in a fair tribunal,' before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy*, 520 U.S. at 904-05 (citation omitted) (quoting *Withrow v. Larkin*, 421 U.S. 35, 46 (1975)). "Because judicial bias infects the entire trial process it is not subject to harmless error review." *Maurino v. Johnson*, 210 F.3d 638,

645 (6th Cir. 2000) (citing *Chapman v. California*, 386 U.S. 18, 23 & n. 8 (1966)); *see also*, *Rose v. Clark*, 478 U.S. 570, 577 (1986) (citing *Tumey v. Ohio*, 273 U.S. 510 (1927)).

Habeas relief on the basis of judicial bias is appropriate only if "the state trial judge's behavior rendered the trial so fundamentally unfair as to violate federal due process under the United States Constitution." *Duckett v. Godinez*, 67 F.3d 734, 740 (9th Cir. 1995). As a general matter, habeas relief will be appropriate only upon a showing that the trial judge was actually biased or prejudiced against the petitioner. *See Fero v. Kerby*, 39 F.3d 1462, 1478 (10th Cir. 1994). However, in exceptional circumstances "the likelihood of bias or appearance of bias can, in certain circumstances, be so substantial as to create a conclusive presumption of actual bias." *Id*. (internal quotation omitted). The appearance of bias situation is limited to cases in which "a judge is faced with circumstances that present some actual incentive to find one way or the other[,]" *id*. (internal quotation omitted); *see also*, *Del Vecchio v. Illinois Dep't of Corrections*, 31 F.3d 1363, 1372 (7th Cir. 1994) (en banc), such as where the judge has a pecuniary interest in the outcome or has been the target of repeated abuse by one of the parties. *See Six v. Delo*, 885 F. Supp. 1265, 1271 (E.D. Mo. 1995), *aff'd*, 94 F.3d 469, 478 (8th Cir. 1996).

As the Supreme Court has noted in the context of the federal recusal statute, "[t]he alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966); *see also*, *Liteky v. United States*, 510 U.S. 540, 549-51 (1994); *Browning v. Foltz*, 837 F.2d 276, 279 (6th Cir. 1988). For this reason,

> judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. In and of themselves (i.e., apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism

8

or antagonism required . . . when no extrajudicial source is involved.

*Liteky*, 510 U.S. at 555.   Thus, "[a] judge's ordinary efforts at courtroom administration–even a stern and short-tempered judge's ordinary efforts at courtroom administration–remain immune." *Id*. at 556.   Although *Liteky* was decided on the basis of the federal recusal statute, it provides guidance for resolving habeas claims of judicial bias. *See Maurino*, 210 F.3d at 645; *Poland v. Stewart*, 117 F.3d 1094, 1103-04 (9th Cir. 1997).

2.      *Analysis*

Petitioner contends that because the circuit court judge who presided over his case was the brother of the prosecuting attorney who represented the government during the preliminary examination, the trial judge was biased against him.   The Michigan Court of Appeals rejected this claim, relying on the Michigan recusal rule, MICH. CT. R. 2.003(B).   The court reasoned that recusal was not required under this rule because the trial judge's brother did not serve as a prosecuting attorney in the proceeding before the trial judge; rather, the preliminary examination was a separate proceeding before a different judge. *See Hill*, 2009 WL 1830750, at *1.   The court concluded that petitioner "failed to overcome the presumption of judicial impartiality[.]" *Id*.   Petitioner cannot show that his decision was an unreasonable application of clearly established federal law.

As noted above, petitioner can show that he was denied due process by showing either "actual bias" on the part of the trial judge or that "circumstances were such that an appearance of bias created a conclusive presumption of bias." *Fero*, 39 F.3d at 1478.   Here, petitioner does not point to "any part of the record which reveals any alleged bias by" the trial judge, and thus he can succeed only by showing circumstances giving rise to a presumption of bias. *Id*.; *see also*, *Davis v. Jones*, 441 F. Supp. 2d 1138, 1157 (M.D. Ala. 2006), a*ff'd*, 506 F.3d 1325 (11th Cir. 2007).   As

9

the Sixth Circuit has explained,

> [i]n only two types of cases has the Supreme Court actually held that something less than actual bias violates constitutional due process–(1) those cases in which the judge "has a direct, personal, substantial pecuniary interest in reaching a [particular] conclusion;" and (2) certain contempt cases, such as those in which the "judge becomes personally embroiled with the contemnor."

*Railey v. Webb*, 540 F.3d 393, 400 (6th Cir. 2008) (citations omitted) (alteration in original) (quoting, respectively, *Tumey v. Ohio*, 273 U.S. 510, 523 (1927) and *In re Murchison*, 349 U.S. 133, 141 (1955)).  As relevant here, the Supreme Court recognized in *Tumey* that "matters of kinship" do not raises questions of "constitutional validity," but merely go to "legislative discretion" in crafting recusal rules.  *Tumey*, 273 U.S. at 523; *see also*, *Railey*, 540 F.3d at 400.  In light of the absence of any Supreme Court law suggesting that recusal is required by the Due Process Clause where the trial judge is related to a party or attorney, the federal courts of appeals have repeatedly rejected claims similar to those made by petitioner here.

For example, in *Fero*, *supra*, the trial judge's brother-in-law represented the family of the victim in a separate civil wrongful death action against the defendant, and the judge's son was employed as a law clerk by the prosecutor.  *See Fero*, 39 F.3d at 1475.  The court concluded that these relationships did not create a presumption of bias, because neither the judge's son nor brother-in-law was a party to either the criminal proceeding or the separate civil action, and the trial judge did not stand to gain personally based on the outcome of the criminal proceeding.  *See id*. at 1479-80.  In *Dyas v. Lockhart*, 705 F.2d 993 (8th Cir. 1983), the judge at the petitioner's trial was the uncle of the prosecuting attorney and the brother and father of two deputy prosecuting attorneys who participated in the prosecution.  *See id*. at 995.  Noting that neither the trial judge nor the prosecuting attorneys had a personal financial interest in the criminal prosecution, the court held that the trial

10

judge's "relationship to the Prosecuting Attorneys was, standing alone, insufficient to raise the conclusive presumption of his actual bias." *Id*. at 997.[1]  In *Welch v. Sirmons*, 451 F.3d 675 (10th Cir. 2006), *overruled on other grounds by Wilson v. Workman*, 577 F.3d 1284 (10th Cir. 2009) (en banc), the court concluded that no presumption of bias arose from the fact that the lead police investigator, and thus key prosecution witness, was the son of the trial judge. *See id*. at 700.  In *Davis, supra*, the district court found that a presumption of bias did not arise from the fact that the trial judge's brother was the prosecutor who represented the state in the juvenile waiver hearing at which the judge determined that the petitioner would be tried as an adult.  *See Davis*, 441 F. Supp. 2d at 1157-59.  The Eleventh Circuit affirmed this decision, explaining that "[t]here is simply no Supreme Court holding establishing that the type of appearance problem alleged here violates the Due Process Clause or that Davis lacked an impartial tribunal."  *Davis*, 506 F.3d at 1336.  And in *Railey, supra*, the Sixth Circuit found no unreasonable application of clearly established federal law in the state court's rejection of the petitioner's claim that the trial judge was biased because he was the nephew of the prosecuting attorney.  *See Railey*, 540 F.3d at 414-15.  Indeed, even in cases decided under the broader standards of the federal recusal statute, the federal courts have generally found that kinship alone does not require recusal.  *See United States v. Damper*, 353 Fed. Appx. 926, 927 (5th Cir. 2009) (recusal not required where the Assistant United States Attorney who worked on the case prior to its assignment to the trial judge was the trial judge's first cousin); *United States v. Brown*, 54 Fed. Appx. 201, 211 (6th Cir. 2002) (trial judge not required to recuse herself in federal

---

[1]The court in *Dyas* remanded the matter to the trial court for a determination of whether the petitioner could demonstrate actual bias. *See Dyas*, 705 F.2d at 997.  Following a second remand, *see Dyas v. Lockhart*, 771 F.2d 1144, 1148-49 (8th Cir. 1985), the trial court ultimately found that the petitioner failed to demonstrate any actual bias, and the Eighth Circuit affirmed this determination.  *See Dyas v. Lockhart*, 878 F.2d 1105 (8th Cir. 1989).  As noted above, petitioner points to no evidence of actual bias here.

11

drug prosecution based on the fact that her husband was a state prosecutor pursuing the defendant on a murder charge in state court).

In short, as in *Davis*, "[t]here is simply no Supreme Court holding establishing that the type of appearance problem alleged here violates the Due Process Clause." *Davis*, 506 F.3d at 1336. Indeed, the circumstances here are less suggestive of an appearance of bias than the cases discussed above. Unlike in those cases, here the trial judge's brother never represented the prosecution in any proceeding before the trial judge. Rather, his role was limited to a preliminary examination before a different judge of a separate judicial body. In light of this law, petitioner cannot show that the Michigan Court of Appeals's resolution of his claim was either contrary to, or an unreasonable application of, clearly established federal law. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

E.     *Courtroom Appearance (Claim II)*

Petitioner next contends that he was denied a fair trial by the trial court's failure to assistance him in obtaining decent clothing to wear at trial. The Court should conclude that petitioner is not entitled to habeas relief on this claim.[2]

As explained by the Michigan Court of Appeals, during the third day of trial petitioner "protested the fact that he was wearing clothes at trial that he wore at the time of arrest," complaining that the clothes were ripped. "When the trial court inquired further, [petitioner] pointed out that the buttons were missing." *Hill*, 2009 WL 1830750, at *2.     Clearly established Supreme Court law provides that, under the Due Process Clause, "the State . . . cannot compel an

---

[2]Respondent contends that this claim is procedurally defaulted. Because the claim may be readily disposed of on the merits, the Court need not address the procedural default argument. *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997); *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003).

accused to stand trial before a jury while dressed in identifiable prison clothing." *Estelle v. Williams*, 425 U.S. 501, 512 (1976).  However, no clearly established law requires the state to provide alternative clothing.  On the contrary, the federal courts to have considered the matter have held that "the [trial] court is not required to furnish alternate clothing for the defendant." *United States v. Williams*, 641 F.3d 758, 767 (6th Cir. 2011); *see also*, *Van Gorder v. Allerd*, 387 F. Supp. 2d 251, 261 (W.D.N.Y. 2005) (citation omitted) ( "[A]lthough a defendant may not be compelled to stand trial in identifiable prison garb, a defendant has no right under state or federal law to be provided with any particular type of civilian clothing."); *Adams v. Smith*, 280 F. Supp. 2d 704, 718 (E.D. Mich. 2003) (Tarnow, J.).  Because petitioner was not compelled to stand before the jury in identifiable prison clothing, he cannot show that he was denied a fair trial.  *See Purselley v. Biter*, No. CV 12-42-CAS, 2012 WL 4513712, at *7 (Aug. 13, 2012) (no denial of fair trial where petitioner was required to wear the same civilian clothing for a week), *magistrate judge's report adopted*, 2012 WL 4513648 (C.D. Cal. Sept. 27, 2012); *Adams*, 280 F. Supp. 2d at 717-18 (no denial of fair trial where petitioner was required to wear "grossly ill-fitting" civilian clothes).  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.      *Ineffective Assistance of Counsel (Claim III)*

Finally, petitioner contends that he was denied the effective assistance of counsel at trial. Specifically, petitioner contends that counsel was ineffective for: (1) telling the jury that he was at the victim's house; (2) failing to pursue medical evidence that would substantiate his defense to the resisting arrest charge; and (3) failing to call his alibi witness.  The court should conclude that petitioner is not entitled to habeas relief on this claim.

1.      *Clearly Established Law*

13

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *Id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id*. at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id*. With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id*. at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695. It is petitioner's burden to establish the elements of his ineffective assistance of counsel claim. *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same).

As the Supreme Court has recently explained, *Strickland* establishes a high burden that is difficult to meet, made more so when the deference required by § 2254(d)(1) is applied to review a state court's application of *Strickland*:

> "Surmounting Strickland's high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. ----, ----, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689-690, 104 S.Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id*., at 689, 104 S.Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.
>
> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id*., at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ----, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ----, 129 S.Ct. at 1420 . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

*Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).

2.   *Analysis*

a.  *Opening Statement*

Petitioner first contends that counsel was ineffective by conceding during opening statement that petitioner was at the victim's house.  During opening statement, counsel stated:

15

>Mr. Hill and Ms. Anderson has – had been dating for a while.  Mr. Hill wanted to go
>see her.  Ms. Anderson was mad at Mr. Hill because she thought he was fooling
>around on her.  Now, Mr. Hill was over there and Ms. Anderson called her mother
>– excuse me, his mother.  I'm sorry, I'm getting my words mixed up – to tell his
>mother that she had called the cops on Mr. Hill.

Trial Tr., Vol. III, at 16.  Counsel continued that "Mr. Hill denies going over to Ms. Anderson's

house.  That's the first important thing.  He has no clue as to how Ms. Hill [sic] got scratches on

her."  *Id*.

The Michigan Court of Appeals rejected petitioner's claim, reasoning that because "defense

counsel spoke of the victim and defendant's mother . . . it is unclear to whom the 'over there'

reference was directed."  *Hill*, 2009 WL 1830750, at *3.  The court further explained that "defense

counsel did not relate the 'over there' comment to a particular time and date," and counsel expressly

told the jury that he was "mixing up his words" and explicitly stated that petitioner denied going

over to the victim's house.  *Id*.  The court concluded, therefore, that the "[t]he argument, when

reviewed in context, did not negate a defense or admit an element of the charged crime."  *Id*.  This

determination was reasonable.  As the court of appeals explained, counsel's comment was

ambiguous, and counsel clarified that petitioner denied going to the victim's house and assaulting

her.  The case essentially came down to a credibility contest between petitioner and the victim, and

nothing in counsel's brief, ambiguous comment would have affected the jury's assessment of the

victim's credibility.  In light of the "double deference" this Court must give under § 2254(d) and

*Strickland*, petitioner is not entitled to habeas relief on this claim.

### b.  Failure to Obtain Medical Records

Petitioner also argues that counsel was ineffective for failing to obtain his medical records.

Petitioner contends that these records would have showed that the police "brutalized" him, providing

16

a defense to the resisting arrest charge.  At trial, petitioner indicated his unhappiness with counsel's failure to obtain the medical records.  Counsel indicated that he had obtained intake records from a nurse at the jail, and that there was nothing relevant in the medical records.  *See* Trial Tr., Vol. IV, at 3-4.  The court also suggested that the medical records would not be relevant.  *See id*. at 5-6.  The Michigan Court of Appeals rejected petitioner's claim, explaining that petitioner had failed "to present any authority that the alleged use of excessive force by police is a valid defense to resisting and obstructing."  *Hill*, 2009 WL 1830750, at *3.  This determination was reasonable.

At the time of petitioner's conviction and appeals, the Michigan courts had held that § 750.81d abrogated the common law rule permitting a person to use force to resist an unlawful arrest; thus, under the statute, the illegality of an arrest is not a defense to the crime.  *See People v. Corr*, 287 Mich. App. 499, 504, 788 N.W.2d 860, 864 (2010); *People v. Ventura*, 262 Mich. App. 370, 376-77, 686 N.W.2d 748, 751-52 (2004); *cf. People v. Brown*, 475 Mich. 897, 897-98, 716 N.W.2d 274, 275 (Kelly, J., dissenting from denial of leave to appeal).  The Michigan courts had extended this rule to claims of excessive force, holding that an officer's use of excessive force does not provide a defense to the crime.  *See Cummings v. Lewis*, No. 303386, 2012 WL 3579678, at *2 (Mich. Ct. App. July 3, 2012) (per curiam); *cf. Schreiber v. Moe*, 596 F.3d 323, 334-35 (6th Cir. 2010) (rule barring civil rights claims which challenge the validity of a state court conviction did not bar plaintiff's excessive force civil rights claim, where lack of excessive force was not an element of the offense under § 750.81d and use of excessive force did not provide a defense to the charge).  Thus, counsel's and the court's view of the relevance of the information was a correct understanding of Michigan law as it existed at the time of trial.  To be sure, the Michigan Supreme Court subsequently abrogated *Venture* in *People v. Moreno*, 491 Mich. 38, 41, 814 N.W.2d 624, 625

(2012).  It is well established, however, that counsel's performance must be evaluated "as of the time of counsel's conduct,"  *Strickland*, 466 U.S. at 690, and therefore that counsel cannot be deemed ineffective for failing to anticipate a change in the law.  *See Nichols v. United States*, 501 F.3d 542, 545 (6th Cir. 2007); *Lott v. Coyle*, 261 F.3d 594, 609 (6th Cir. 2001).  Because the medical records of petitioner's injuries were not relevant under the law as it existed at the time of his trial, petitioner cannot show that counsel was ineffective for failing to obtain and present these records.

Moreover, even if the records were admissible, petitioner cannot show a reasonable probability that the result of the proceeding would have been different.  First, the records would have been relevant only to the resisting charge.  They would have had no bearing on his guilt with respect to the other charges against him.  Second, all they would have shown was that the police used force against petitioner to secure his arrest.  This fact, however, was admitted.  Under the police version of events, it was petitioner's resistance which necessitated their use of force.  The mere fact that petitioner had suffered injuries as a result of the use of force by police would not have answered the question of whether or not petitioner resisted arrest.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

*c. Alibi Witness*

Finally, petitioner contends that counsel was ineffective for failing to present at trial Jerrell Jones as an alibi witness.  According to petitioner, Jones could have testified that he and petitioner were at a club until about 2:00 a.m. on the night of the incident, and Jones dropped petitioner off at his mother's house at about 2:15 a.m.  At the evidentiary hearing in state court, counsel testified that he spoke to Jones on the telephone, as well as to petitioner and petitioner's mother.  Based on those conversations, counsel determined that Jones could not provide a valid alibi for the time of the

18

crime.  *See* Mot. Hr'g Tr., dated 1/4/08, at 38-39.  Further, petitioner testified that Jones visited him

in jail prior to trial, but despite his request to counsel that Jones be an alibi witness he never told

Jones during those visits that he wanted Jones to be a witness in his case.  *See id*. at 25.  The court

of appeals concluded that, based on this testimony, counsel's decision was a reasonable strategic

one, and thus did not constitute ineffective assistance.  *See Hill*, 2009 WL 1830750, at *4.  The

Court should conclude that this determination was reasonable.

Counsel's strategic decisions regarding what witnesses to call at trial are "virtually

unchallengeable."  *Awkal v. Mitchell*, 613 F.3d 629, 641 (6th Cir. 2010).  The Court's "concern is

not to decide, using hindsight, what [it] think[s] would have been the *best* approach at trial.  Instead,

[the Court] consider[s] only if the approach ultimately taken was within 'the wide range of

reasonable professional assistance' given the circumstances."  *English v. Romanowski*, 602 F.3d 714,

728 (6th Cir. 2010) (quoting *Strickland*, 466 U.S. at 689).  Here, the evidentiary hearing testimony

establishes that counsel investigated the matter of petitioner's alibi, and based on his conversations

with petitioner, petitioner's mother, and Jones, concluded that Jones could not provide a valid alibi

defense.  Petitioner has offered nothing to show that counsel's strategic decision was unreasonable

under *Strickland*, much less that the court of appeals's conclusion that this was a reasonable strategic

decision was itself unreasonable under § 2254(d)(1).

Further, petitioner cannot show that he was prejudiced by counsel's failure to call Jones.  It

is petitioner's burden to establish the elements of his ineffective assistance of counsel claim, *see*

*United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing

counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same).  Thus,

"a petition for habeas corpus relief based on counsel's failure to call witnesses must present this

19

evidence in the form of the actual testimony by the witness or affidavits." *United States ex rel. Townsend v. Young*, No. 01 C 0800, 2001 WL 910387, at *5 (N.D. Ill. Aug. 8, 2001) (citing *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991)); *see also*, *Pittman v. Florida*, No. 8:05-cv-1700, 2008 WL 2414027, at *12 (M.D. Fla. June 11, 2008). Here, petitioner has presented no affidavit from Jones regarding the substance of his purported testimony. And despite being accorded an evidentiary hearing in state court, petitioner failed to call Jones as a witness at that hearing in support of his claim. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

G.      *Recommendation Regarding Certificate of Appealability*

1.      *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial

20

showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.""" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84.  Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable."  *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.  The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue."  FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments.  In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

2.      *Analysis*

Here, if the Court accepts my recommendation regarding the merits of petitioner's claims, the Court should also conclude that petitioner is not entitled to a certificate of appealability.  As

21

explained above, there is no clearly established federal law providing that a conclusive presumption of bias arises solely on the basis of kinship between the trial judge and a witness or attorney for one of the parties.  In light of this law, the absence of any claim of actual bias, and the fact that petitioner's brother did not appear for the prosecution in any proceeding before the trial judge, the resolution of petitioner's judicial bias claim is not reasonably debatable.  Further, because it is clear that while a criminal defendant has a right not to be compelled to appear at trial in prison garb he has no corresponding right to be provided civilian clothing by the government, the resolution of petitioner's clothing claim is not reasonably debatable.  Finally, the resolution of petitioner's ineffective assistance claims is not reasonably debatable, for the reasons explained above. Accordingly, the Court should deny petitioner a certificate of appealability.

H.      *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law.  Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.  If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of

22

objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


                                    s/Paul J. Komives
                                    PAUL J. KOMIVES
                                    UNITED STATES MAGISTRATE JUDGE
Dated: 11/2/12


The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and  by electronic means or U.S. Mail on November 2, 2012.

                    s/Eddrey Butts
                    Case Manager

23